## Johnson v. Belle Point Lumber Company.

(Decided November 10, 1922.)

### Appeal from Lee Circuit Court.

1. ·Corporations—Issuance of Capital Stock.—The constitutional and statutory provisions, prohibiting the issuing of the capital stock of a corporation, except for the equivalent of money paid or labor done are inapplicable to a gift of forty shares of the capital stock of a corporation by one who acquired the stock from the original subscriber who had paid, when it was issued to him, the par value thereof.

2. Corporations—Action to Cancel Certificate of Stock—Evidence.— On an issue as to whether or not a certificate for forty shares of the capital stock of a ·corporation sought to be cancelled in a ·suit filed by the corporation against the holder of the stock, was ·given to the holder by the corporation or by one of its stock-holders, it is held that the evidence shows that the stock was acquired by one of the officers of the corporation in his individual capacity, and by him given to the holder, who was then book-keeper of the company; and since the stock, when originally issued by the company, was paid for at its par value, the certificate is legally held and, on the evidence adduced, cannot be cancelled.

B. G. WILLIAMS for appellant.

HURST & ROSE, W. A. STANFILL, W. E. FAULKNER and H. C. FAULKNER for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

The subject of this litigation is a certificate of forty shares, of the par value of one hundred dollars a share,

of the capital stock of the appellee, Belle Point Lumber Company, issued to appellant, W. B. Johnson, on July 23, 1912, and now held by him. The circuit court adjudged that appellant was not the owner of the stock, and mandatorily directed him to deliver the certificate to appellee for cancellation.

In 1905 or 1906 the Belle Point Lumber Company was organized by W. J. Roberts, H. M. Hensley and H. H. Hensley. Roberts was elected president of the company and bought fifty shares of its capital stock, paying therefor $5,000.00. The plant of the company was originally located at Frankfort, but that location was found to be disadvantageous, and the owners of the company later moved the plant to Lee county. In the meantime Roberts had pledged his stock to a bank in Frankfort to secure a loan of $2,500.00. In 1909 Roberts seemingly concluded that the business was doomed to failure and severed his connection with it, and in 1912 H. H. Hensley, with the consent of Roberts, purchased for one hundred dollars the fifty shares of stock pledged to the bank, making payment therefor by check of the appellee, which was charged on the books of the company to Hensley.    A few months later, and on July 23, 1912, the Hensleys entered into an agreement with Johnson, who was then bookkeeper for the company, by which they sold and delivered to him the forty shares of stock involved in this suit, but the contract of sale provided that the stock should not participate in the dividends of the company until the Hensleys had been paid, in dividends or otherwise, the advancements made by them to the company amounting at that time to $61,450.24. At the same time they presented to James Updyke, another employe of the company, ten shares of its capital stock. It is admitted that these certificates of stock were issued in lieu of the certificate for fifty shares originally issued to Roberts. In 1915 appellant and the two Hensleys, being the only stockholders of the company, except perhaps Updyke, who, some time after the delivery of the ten shares to him, returned them to one of the Hensleys, but when is not shown, agreed to and did credit H. H. Hensley, on the books of the company, with the hundred dollars that had been charged to him in 1912, when the stock was purchased from the Frankfort bank.    However, appellant continued to hold the stock certificate, without objection from the other stockholders, until March, 1919, when he severed his employment with the company. For a con-

siderable time before appellant severed his connection with the business there had been friction between him and the Hensleys, and several times he had been subjected to criticism with respect to the character of service that he was rendering. There had also been occasional differences between them as to the disposition of the earnings of the company, and, finally, in June, 1919, the Hensleys, owners and holders of all the capital stock of the company, except the forty shares in controversy here, caused this action to be filed in the name of the company to cancel the certificate held by appellant, on the ground that it was issued to him by the company without consideration, contrary to the provisions of section 193 of the Constitution and section 568 of Kentucky Statutes.

The real point at issue, as we view the evidence, is: was the stock sold or given to appellant by the Belle Point Lumber Company or by H. H. and H. M. Hensley individually, the then owners of all the outstanding capital stock in that company? And as conducive to a clear understanding of that inquiry, it may be observed, that if it was issued by the company in lieu of a like number of shares previously purchased by W. J. Roberts at par and later acquired from the bank by the Hensleys, and by them given to appellant, the transaction cannot be regarded as contravening either of the cited constitutional or statutory provisions.

It is the claim of appellee that it purchased the stock; and, in support of that claim, it says that the natural and logical thing for it to do was to purchase the stock in order to protect itself against an indebtedness of about $2,000.00 that the Contrary Lumber Company owed it, Roberts being the principal stockholder of that company. We are, however, unable to find in the record any basis for that view of the transaction, because the Contrary Lumber Company was a corporation, and, although Roberts was the principal owner of it, he was not personally bound for its debts; and besides, it is not shown that Roberts was induced to sell the stock, or that there was any reason why he should sell it, in order to protect appellee's claim against the Contrary Lumber Company. The stock was considered worthless, and, for all that appears in the record, any one who was willing to pay a nominal price for it might have bought it. It was purchased for cash, and it does not appear that the account of the Contrary Lumber Company with appellee was in

anywise affected by the purchase.   In view of these facts, it is not believed that the indebtedness of the Contrary Lumber Company had anything to do with the buying of the stock from the bank, and, hence, the reason assigned by appellee for its claim in this particular fails.

Another contention of appellee is that the contract of July 23, 1912, is an agreement for future earnings only. This insistence also seems to us to be without merit, for how the agreement can be so construed, or why it was desirable for the company to make an agreement with reference to future earnings, we are unable to perceive. There was no conceivable reason for the company's entering into an agreement as to earnings with one who was not a stockholder in it, or who had no financial interest in its business affairs.   The reason, if there was one, for making an agreement as to "future earnings," and the purposes to be effectuated thereby, are not disclosed by appellant.   And in the absence of some explanation of or reason for such a course on the part of appellee, which of itself would be incomprehensible, we are inclined to regard the assertion in the light of its natural consequences, in which view it does not seem to us to merit serious consideration.

Perhaps the most significant and persuasive fact in the record is that, at the time the certificate for fifty shares was acquired, the purchase price thereof was charged to the account of H. H. Hensley.   This is a clear indication that he was the purchaser and owner of the stock.   The force of that circumstance is not weakened by the credit of $100.00 given his account three years later, by the common consent of the three stockholders, for unquestionably they all recognized the fact that nothing was paid for the stock by Johnson, and it was not fair that H. H. Hensley should be charged with the cost of it. Johnson did not pay for the stock, but the purpose of the Hensleys in presenting the certificate to him, and in giving to Updyke ten shares, may readily be understood in the light of the fact that their action in that respect was conformable to the wise business policy of enhancing the interest and enthusiasm of employes who, by reason of their positions, must assume, in some measure, responsibility for the successful operation of the business.

There are other facts in the record, in addition to the one mentioned, plainly indicating that H. H. Hensley purchased the stock in his individual capacity, and, with

his brother, gave it to appellant. On the strength of appellant's holding of the stock, he was elected vice-president of the company, and held that position for many years; and, moreover, it is shown that when he sought an increase in salary, on one occasion, one of the Hensleys told him that they would not raise his salary as they thought that they had done enough for him: "I told him I thought we had done enough. If he would give the stock back we would raise his salary." At another time, in the course of a conversation relative to the disposition of the earnings of the company, one of the brothers offered to purchase the stock for a thousand dollars. These facts are uncontradicted, and they show, independently of the contract of July 23, 1912, that the transfer was made by the Hensleys as individuals, and that they owned the stock at the time of making it. Another fact, fortifying that view, is that the contract of sale was signed by H. H. and H. M. Hensley, and not by the appellee. It, therefore, appears that they held themselves out at that time as the owners of the stock, and certainly their claim in that respect was justified by the records of the appellee company, which showed on their face that the stock was not purchased by the company, but was purchased by H. H. Hensley.

From a consideration of the facts referred to, which in our judgment are controlling, we conclude that the stock was purchased by H. H. Hensley and by him and his brother given to appellant. In view of that conclusion, the constitutional and statutory provisions relative to original subscriptions to and sales of the capital stock of corporations, cited by appellee, are not here for consideration.

The judgment is reversed and cause remanded with directions to the lower court to dismiss the petition.